IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

vs.                                    CASE NO. 5:06mc3-RS

CHARLES D. SAUNDERS,

    Respondent.
_____/

ORDER

    Before the Court is the Government's Motion for Contempt (Doc. 30-1), Respondent's Affidavits of Truth (Doc. 33, 37), and the Government's Response to the Court's Order (Doc. 36). Respondent was provided further opportunity at a hearing to show cause why he should not be held in civil contempt on August 18, 2006. Respondent was personally served with notice of the hearing by the United States Marshal (Doc. 38), yet failed to appear. The Government's motion is granted and Respondent shall be placed in the custody of the United States Marshal immediately and fined $250/day until he complies with the Court's orders.

I. Facts

    On October 25, 2005, the Internal Revenue Service issued a summons requiring the Respondent to appear before Revenue Officer Wanda L. Waters on November 17, 2005, at 10:00 AM. (Doc. 1). A copy of the summons was served on Respondent's usual place of abode by Revenue Officer Waters. Id. Respondent did not appear in response to the summons. Id. Respondent did respond to the summons on November 2, 2005, claiming that he was not responsible for paying taxes. (Doc. 1, Exhibit 3). On March 22, 2006, the Government filed a Petition to Enforce Internal Revenue Summonses. (Doc. 1).

    On March 27, 2006, an order requiring Respondent to show cause why he

should not be subject to the IRS summons was entered. (Doc. 3). On April 18, 2006, the Government filed a Notice of Filing Answer (Doc. 4-1) stating that it had received a written communication from Respondent. The letter, dated April 13, stated, in part, "Returned within three days no contract" and made claims that were legally frivolous. After reviewing the Government's filing, the Court issued an order on April 18, 2006, stating that it would treat Respondent's communication as an objection to the IRS Summons and ordered that Respondent appear before the Court on June 1, 2006, in order to show cause why the subject summons should not be enforced. (Doc. 5). Respondent was also ordered to produce for the Court's inspection all documents and records described in the IRS Summons. (Doc. 5). Prior to the hearing, the Court reviewed all of Respondent's submissions, including the self-titled "Affidavit of Truth" and "Special Restricted Appearance and not Generally." All of these submissions contained a number of legally frivolous claims such as "Affiant has not evidence or records that Charles-David: family of Saunders a free-born living man is one TAXPAYER, a legal fiction and believes no proof exist," and challenging the jurisdiction of the Court (Docs. 7,10, and 12).[1] Notably, the "Special Restricted Appearance" document contained threats of civil action against the United States Attorney and AUSA Benjamin Beard. (Doc. 10).

      On June 1, 2006, the show cause hearing took place. The Court found that the Government had met its legal burden for enforcement of the IRS summons. Despite being given ample opportunity, Respondent did not provide the Court with any legitimate legal reason why the summons should not be enforced. As a result, Respondent was ordered to fully respond to the summons by June 7, 2006 (Doc. 13) and to not file anything against any person associated with these proceedings without the Court's approval. Respondent was also reminded that should he refuse to comply with this order, the summons would be enforced through civil contempt proceedings that

---

[1] Apparently, Respondent believes there is a legal distinction between "Charles David Saunders" the person and "Charles David Saunders" the Living Soul. The Court has been unable to locate any precedent that supports such a distinction. In addition, it is clear that 26 U.S.C. § 7604 provides this Court with jurisdiction.

could result in jail time and/or a substantial fine.

On June 8, 2006, the Government filed a Status Report to advise that Respondent had failed to comply with the Court's order of June 1, 2006. Respondent claimed that he did appear at the hearing (albeit late), but was unable to find the IRS agent assigned to his case. (Doc. 22). As a result, another show cause hearing was scheduled for June 27, 2006. (Doc. 17). Prior to the second show cause hearing, the Government filed a second Report to the Court stating that Respondent did appear at a rescheduled appointment with the IRS on June 14, 2006. (Doc. 19). However, instead of fully complying with the requirements of the summons, Respondent asked the IRS agent to sign some papers, including "some form of affidavit indicating that the IRS was requiring the Respondent to waive his Fifth Amendment privileges." (Doc. 19). Ultimately, Respondent left the meeting without handing over any documents or answering any questions posed by the IRS agent. (Doc. 19).

On June 16, 2006, the Government filed a Motion for Order Directing Respondent to Appear with the Summoned Documents (Doc. 20). On June 19, 2006, Respondent was ordered to "produce all records within his control, including records which Respondent contends are protected by any privilege, as described" in the IRS Summons dated October 25, 2005. (Doc. 21). On the same day, Respondent filed several documents including another "Affidavit of Truth" in which Respondent summarized what transpired during his meeting with the IRS agent on June 14, 2006. He stated that "I requested that they sign an Affidavit of Truth and to attach in writing their authority to compel me to waive my 4th and 5th Amendment Rights." (Doc. 22). After the IRS agent refused to do so, Respondent asked for an "intermission" during which he "confirmed to myself that I was within my rights" and again asked the IRS agent to provide a "written copy of her authority and the Affidavit of Truth signed and that I was well within my rights." Once again, the agent refused to sign Respondent's documents. Apparently, as a result of the agent's refusal to sign the "Affidavit of Truth," Respondent decided to not comply with the Court's order.

In order to accommodate Respondent's schedule, the second show cause hearing was rescheduled for July 6, 2006. (Doc. 23). On July 5, 2006, Respondent filed

another "Special Restricted Appearance by 'Affidavit' and not Generally" which contained nothing of legal substance (e.g. " I do not choose to contract with the IRS or UNITED STATES DISTRICT COURT for failure to state a claim in which relief can be granted, and that no valid contract now exists). (Doc. 25). Notably, Respondent once again made legal threats - "any trespass...in the form of the INTERNATIONAL COMMERCIAL CLAIM is deemed a $2,000,000 tort for each occurrence by agreement of the parties and by public notice." (Doc. 25). On July 6, 2006, Respondent filed 50 pages of documents, the vast majority of which contained nothing of legal substance (e.g. "Third Party Intervener's COMMERCIAL NOTICE OF SURRENDER OF THE ENS LEGIS STRAMINEUS HOM[O] (DEFENDANT)). (Doc. 27). However, Respondent did reiterate his belief that the Fifth Amendment's right against self incrimination protected certain of his documents from production. (Doc. 27).

On the same day, a second show cause hearing was held. Respondent was given every opportunity to make any and all objections to the IRS summons. In particular, the Court asked Respondent if there were any documents he felt were protected by the Fifth Amendment. Under the standard set out in United States v. Argomaniz, 925 F.2d 1349, 1353 (11th Cir. 1991), "The central standard for the... application [of the [F]ifth [A]mendment privilege against self-incrimination is] whether the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination. The privilege applies only in instances where the witness has reasonable cause to apprehend danger of criminal liability." (Internal cites and quotations omitted). Respondent was unable to provide any evidence indicating that by turning over certain documents, he faced "a substantial and real hazard of self-incrimination." Id. Respondent's claims to the contrary are not sufficient for "it is the role of the district court, not the taxpayer, to evaluate the taxpayer's claim of incrimination and determine whether it is reasonable. The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself -his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified.." Id. at 1355.

Consequently, Respondent was ordered to not file claims against anyone in

these proceedings without prior permission of the Court, to produce the records ordered by the IRS summons in an expeditious manner, and to refrain from filing documents with no legal basis. In order to help Respondent "help himself," the Court has repeatedly counseled Respondent and asked him to seriously consider retaining an attorney. However, Respondent believes that should he retain counsel, "I would have to give up my right to speak on my behalf. My counsel would speak for me since I would then become the CORPORATE FICTION who can't speak and would have no constitutional rights, then you would have jurisdiction." (Doc. 33). In a last ditch attempt to convince Respondent to comply with the Court's order, the Government even offered to review the material forwarded to it in order to determine if there was anything subject to any privilege and if such a document was found, it would be returned to Respondent. (Doc. 36).

      On July 28, 2006, the Government filed a Motion for Contempt (Doc. 30) alleging that Respondent still had not complied with the Court's orders. Respondent had agreed to provide the Government with the requisite documents by July 14, 2006. When nothing arrived by that date, the Government sent Respondent a letter asking him to submit the documents no later than July 26, 2006. On July 26, 2006, Respondent submitted eight pages of documents to the AUSA, with a cover letter stating that he had "secured all the requested corporate documents." (Doc. 30-2). Subsequently, on July 31, 2006, an order was issued directing Respondent to show cause why he should not be held in civil contempt for failure to follow the Court's orders. (Doc. 31). On August 8, 2006, Respondent filed a response (Doc. 33) which once again contained threats and legally frivolous claims. The only contention worth addressing is Respondent's summary of the meeting he had with AUSA Beard after the show cause hearing. Respondent states that after the 40 minute meeting, " I left that meeting feeling Mr. Beard approved of what I was handing in for the corporate information." In addition, he contends that "for some unknown reason, the [C]ourt keeps thinking I am going to turn in my personal records for the [1999-2004]. I only agreed to turn over my corporate records for the years in operation being 2002, 2003, and 2004. Nothing else!" (Doc. 33).

      AUSA Beard, in his Motion for Contempt summarizes the content of the 40

minute meeting as follows:

> During that meeting, the Respondent offered four sheets of paper, representing corporate records for only two of the years identified in the IRS summons. When asked, the Respondent admitted that he had in his possession more records for all the years. At the time of the July 6, 2006 meeting, after the hearing, the Respondent also had in his possession a box of cancelled checks and personal bank statements for an unidentified period of time, which the Respondent suggested that he did not have to produce. The undersigned [AUSA Beard] insisted that the Respondent was **to produce all records**. [Emphasis added]

(Doc. 30). In its Response to Respondent's Affidavit of Truth, the Government contended that contrary to Respondent's version of the meeting, Respondent was "repeatedly asked" to provide all records required of him. (Doc. 36). The Government also states that the materials turned over by Respondent to this date "do not comply with the Court's order as the [R]espondent has not provided all the documents requested by the IRS expeditiously." (Doc. 30). Based on the Government's version of what took place at the July 6 meeting, the Court's explicit, clear, and lawful instructions, and the unequivocal nature of the IRS Summons, it is difficult to fathom that the Respondent could have reasonably believed that he was only required to turn over corporate records for "the years in operation 2002, 2003, and 2004."

Finally, on August 10, 2006, Respondent submitted another "Affidavit of Truth" which contained nothing but frivolous legal babble (e.g. "As we investigate the Thirteenth Amendment which did free the black man from a condition of slavery...) and threats (I demand we close this before your interference in my commercial business escalades [sic] into damages for which I must seek compensation"). (Doc. 36). As with everything else Respondent has filed, there is nothing of substance in his Affidavit that merits any discussion.

## II. Standard for Civil Contempt

Civil contempt is appropriate when the defendant's contempt is clear and convincing. "This clear and convincing proof must also demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous;

and 3) the alleged violator had the ability to comply with the order." McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000).

The Court's orders of June 1, 2006 and July 6, 2006, are clearly and convincingly valid and lawful. The orders unequivocally order Respondent to respond fully to the IRS summons dated October 25, 2005. The IRS summons required Respondent to turn over "[a]ll documents in your possession or control reflecting the receipt of taxable income by you for the year(s) [1999-2004]." This included personal as well as corporate records. There was absolutely no ambiguity about the intent of the Court's orders - Respondent was to fully comply with the IRS summons.

Additionally, both the Court and the Government have extended deadlines, rescheduled hearings, and spent a disproportionate amount of time explaining what Respondent had to do to comply with the Court's orders. Based on Respondent's most recent Affidavits of Truth, it is patently clear that he has no intention of complying with the Court's orders ("THE PROBLEM WE HAVE is that for some unknown reason, the [C]ourt keeps thinking I am going to turn in my personal records for the [1999-2004]. I only agreed to turn over my corporate records for the years in operation being 2002, 2003, and 2004. Nothing else!" ) This statement, among others, leaves no doubt in the Court's mind that Respondent has the ability to comply with Court's orders and is simply choosing not to do so. It is also worth noting that Respondent has never claimed that he could not comply with the Court's orders. Thus, there is clear and convincing evidence of Respondent's contempt.

On August 16, 2006, Respondent was ordered to appear at a show cause hearing scheduled for August 18, 2006. Thirty minutes prior to the hearing, the Court received another "Affidavit of Truth" from Respondent in which he informed the Court that he would not appear at the hearing, reiterated his previous claims that the Court did not have jurisdiction ( "IN ORDER TO HAVE CONTEMPT OR JURISDICTION, you must have contract"), and stated that "this has gone way past reason and simply intelligence and is now beginning to interfere with my personal commercial business." Nothing in this communication from Respondent showed cause for Respondent's non-compliance with the Court's previous orders.  Following the hearing, in which

Respondent failed to appear, the Court granted the Government's Motion for Contempt, finding Respondent in civil contempt of its orders dated June 1, 2006, and July 6, 2006.

### III. Sanctions

District courts are given wide discretion in fashioning an equitable remedy for civil contempt. In Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1304 (11th Cir. 1991), the 11th Circuit summarized how a district court should fashion such remedy:

> The court has the power to impose coercive and compensatory sanctions. In re Chase and Sanborn Corp. v. Nordberg, 872 F.2d 397 (11th Cir.1989). " 'The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. This may entail the doing of a variety of acts····' " EEOC v. Guardian Pools, Inc., 828 F.2d 1507, 1515 (11th Cir.1987) (quoting United States v. United Mine Workers, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947)). When fashioning a sanction to secure compliance, a district court should consider " 'the character and magnitude of the harm threatened by continued contumacy and the probable effectiveness of any suggested sanction in bringing about the result desired.' " EEOC, 828 F.2d at 1515 (quoting United Mine Workers, 330 U.S. at 304, 67 S.Ct. at 701). Sanctions may be imposed to coerce the contemnor to comply with the court's order, but may not be so excessive as to be punitive in nature. Matter of Trinity, 876 F.2d at 1493. The court's discretion, however, "must stay within the bounds of due process." Mercer v. Mitchell, 908 F.2d 763, 766 (11th Cir.1990). Due process requires that the court inform the alleged contemnor of the contemptuous conduct, and provide a hearing in which the alleged contemnor may explain why the court should not make a contempt finding. Mercer, 908 F.2d at 767. Although the district court has the authority to impose sanctions designed to ensure compliance, the sanctions cannot be any greater than necessary to ensure such compliance. Mercer, 908 F.2d at 768 n. 9. The district court had numerous options, among them: a coercive daily fine, a compensatory fine, attorney's fees and expenses to the Receiver, and coercive incarceration.

After considering the standard set out by the 11th Circuit, the Court finds that immediate incarceration plus a fine of $250/day to be sufficient to coerce Respondent to comply with the Court's orders. The contempt can be cured if and when the Respondent fully complies with the Court's orders.

ORDERED on August 18, 2006.

                                              **/S/ Richard Smoak**
                                              **RICHARD SMOAK**
                                              **UNITED STATES DISTRICT JUDGE**